UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


| United States of America, | Case No. 3:18cr96 |
|---|---|
| Plaintiff | |
| v. | MEMORANDUM OPINION |
| Larry Singleton, | |
| Defendants | |

Defendant Larry Singleton seeks to suppress evidence obtained during and following a traffic stop of a vehicle Singleton was driving. (Doc. No. 20). On August 1, 2018, I held an evidentiary hearing at which the parties also offered oral argument in support of their respective positions. After hearing the arguments of counsel and reviewing the evidence submitted, I conclude the traffic stop was permissible under the Fourth Amendment and deny Singleton's motion.

I. **BACKGROUND**

In November 2017, the Toledo field office of the Drug Enforcement Administration ("DEA") began investigating a possible shipment of cocaine from Mexico to northwest Ohio. DEA Agent John Dreskler made contact with a confidential source who informed the DEA that the source had been directed to bring the cocaine to the Toledo area and then call an individual who meet the source to get the cocaine. The DEA in Texas seized eight kilograms of cocaine from the source, who then traveled to Ohio, where the DEA oversaw the creation of "sham" cocaine – a

non-controlled substance mixed with a small amount of cocaine, packaged to replicate the product conveyed to the source in Texas.

On February 13, 2018, the source parked his tractor-trailer in the parking lot of a large retail store in Oregon, Ohio. The source transferred the sham cocaine to Singleton, who the source knew by the name "Jerry." Singleton gave the source a duffle bag containing over $200,000 in cash and drove away in a white van. DEA agents followed the van in unmarked vehicles as it drove from Oregon into the City of Toledo, where Trooper Ryan Stewart – an Ohio state highway patrolman – caught up to the vehicle and initiated a traffic stop as the van pulled into the parking lot of a convenience store. Officers then removed Singleton and a passenger from the van and recovered the sham cocaine. Singleton was arrested and subsequently indicted for attempting to possess cocaine with the intent to distribute.

## II. DISCUSSION

Singleton seeks to suppress any evidence obtained following the traffic stop, asserting the trooper lacked probable cause to stop his van because the video from the trooper's dash camera does not reveal a traffic violation and that the trooper lacked reasonable suspicion of ongoing criminal activity necessarily to support a *Terry* stop. I conclude the government has presented sufficient evidence to support both probable cause and reasonable suspicion findings and deny Singleton's motion to suppress.

"It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)). Though Singleton argues the dash cam video does not support the stated reason for the traffic stop (a turn signal violation), Stewart testified that the dash cam does not show the same vantage point that he had as the driver, and Stewart could see the rear of the van through

2

the windshield and rear window of a Jeep which was traveling between the van and Stewart's patrol car. Stewart testified he did not see Singleton activate his turn signal until after the van entered the intersection. The dash cam video does show the Jeep hit its brakes and then quickly swerve around the van as it turned into the parking lot – at least circumstantial evidence that Singleton did not activate his turn signal until just before he turned. The government has presented sufficient evidence to show Stewart had "reasonable grounds" to believe Singleton had committed a traffic violation. *United States v. Dickens*, --- F. App'x ---, 2018 WL 4203481, at *3 (6th Cir. Sept. 4, 2018).

The record also supports the conclusion Steward had a reasonable suspicion that Singleton was engaged in criminal activity. Stewart attended a briefing at the DEA offices on the morning of February 13, 2018, prior to the arranged meeting between the source and Singleton, during which he learned of the basics of the operation to come – that the DEA had a source who would transfer sham cocaine to a then-unknown individual. Stewart also was instructed to pull the van over by DEA agents who witnessed Singleton obtain the cocaine from the source. As Singleton acknowledges, the Sixth Circuit has adopted and applied the "collective knowledge rule," through which a court "impute[s] collective knowledge among multiple law enforcement agencies" and permits "a responding officer [to execute] a stop at the request of an officer who possess the facts necessary to establish reasonable suspicion." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012).

Further, the Sixth Circuit has specifically rejected Singleton's argument that I cannot conclude the stop was permissible under *Terry* because the record "is void of specific conversations between the law enforcement officials" involved in the investigation and stop. (Defendant's Supplemental Brief, Doc. No. 22 at 4). On the contrary, the collective knowledge rule permits an officer to "conduct a stop based on information obtained by fellow officers . . . even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop." *United States v. Carrillo-Alvardo*, 558 F. App'x 536, 541-42 (6th Cir. 2014) (quoting *Lyons*, 687 F.3d at 765-66).

3

### III. Conclusion

Accordingly, Singleton's motion to suppress, (Doc. No. 20), is denied.


So Ordered.

                                                s/ Jeffrey J. Helmick
                                                United States District Judge